Bentley, J.
The petition in this case was filed September 16, 1891, in the court of common pleas. It sets-forth generally, that in the summer of 1890, by due and proper proceedings, the plaintifflet a contract to one Philip Sullivan to improve Second street, in this village, between two certain streets mentioned in the petition ; that Sullivan gave bond for the performance of this work that he had contracted to do ; entered upon the performance of the work; did some portion of it, and finally in October of that year, 1890, abandoned the work. That certain of the sureties upon his bond, after the abandonment of the contract by Mr. Sullivan, gave notice that they would complete the contract as provided in the original specifications, as sureties upon Sullivan’s bond. That they thereupon, and with the assent of the village, completed the work, which was accepted by the village.
The petition states that no estimate had been given to Sullivan up to the time that he had abandoned the work. About the 31st day of October, 1890, plaintiff caused an estimate to be made of everything done in pursuance of the contract up to the time of abandonment by Sullivan, which estimate amounted to $2,414.58.
The petition further says that on completion of the contract by the sureties, the village paid the sureties all the contract price except $2,414.58, and it makes defendants to the petition the various parties who claim to have liens upon the fund in question, ■ and Mr. Sullivan himself. It asks that the court adjudge how this fund shall be distributed; thatthe'validity and priority of all liens and claims be determined; that the plaintiff may be directed in the payment of the same out of the funds; that the defendant Sullivan and the other defendants herein may be estopped from asserting any further liens or claims against plaintiff arising under said contract; and for all proper relief.
The petition, however, after alleging that the amount of $2,414.58 was the balance of the original contract price after *3 the payment to the sureties, sets up that the village há's in fact paid out a portion of that amount, so that the whole sum of $2,414.58 is not in its hands.
The allegation'is this: “ Plaintiff says that soon after said Sullivan entered upon the performance of his said contract, being unable to go on with said work, plaintiff, to enable him to do so, in consideration that he would not abandon said work, in good faith, made a payment to said Sullivan of $200.00 on said contract, without any estimate having been furnished therefor as required by the terms of said contract; also that the plaintiff, with the assent of said Sullivan, he being still unable to complete said work for want of means, bound itself to the defendant, Geo. E. St. John to the amount of $496.27, in consideration that if he would contribute labor and materials for the completion of said work, plaintiff would pay him for moneys advanced on that account, without any estimate having been made to said Sullivan as provided by the terms of said contract.”
• There is scarcely any contest regarding the payment of this $200.00. While it was made in advance of the time provided for in the contract, yet it seems to have been made in good faith, and for the purpose named in the petition; and under the holding of the court in Schneidhorst v. Luecking, 26 Ohio St. 47, it seems that there could be no question about the payment of that item — that the village had a right to make the payment, and the sum $2,414.58 should be diminished by $200.00.
There is, however, a spirited contest about deducting the $496.27, it being claimed that the village had no power or right to make the contract set forth in the petition, and even if it had, it would have no right to deduct this sum from the above amount to the detriment of the creditors of Sullivan and the sureties. It is contended that there was no resolution or ordinance by the council regarding the payment of this sum; that, in fact, no binding agreement was made with the council regarding it; that at best it was 'a dealing of *4 the members of the council with St. John, and was not binding on the village, whatever effect it would have on the members of the council.
It will be noticed in the case I have mentioned in the 26 Ohio St., that this was done and approved by the Supreme Court: “ A contractor after entering upon the performance of his contract, being unable for want of means to go on with the work, the owner, to enable him to do so, in consideration that he wmuld not abandon the contract, in good faith made payments to the contractor faster than he was required to do by the original contract, for which he was to be allowed interest; and also, with the assent of the contractor, bound himself to other parties, in consideration that if they would contribute labor or materials towards the completion of the work, he would pay them therefor. Held, that the money thus paid, and the liabilities thus assumed, were not payments in advance of the sums due, within the section of the mechanic’s lien law.” The defendants claim that there was no obligation entered into by the council of the village, or by the village, in the form prescribed by the statute for paying out the money of the treasury. It is contended that the council had no power to make such agreement.
The proof upon that subject shows that upon a regular meeting of the council, with a majority, if not all the members of the council present, it was made to appear by statements there that Sullivan had certain stone shipped to him here for the purpose of this improvement; that the railroad company required him to pay the freight; that he would have to abandon the contract unless something was done to help him pay the demands of the railroad company. Thereupon, St. John being present, and being treasurer of the corporation, a suggestion was made that he advance the money for this purpose, it being said that he had the money in his hands, and that, as the contractor consented that out of the first estimate made he should be repaid, St. John would be safe, and it would be proper for him to pay this money in advance to pay *5 the freight. St. John declined to do this unless he was sure of getting his njoney. He was assured there by the members of the council that he would be safe in so doing. The proof also shows that St. John, relying upon the statements made and the situation there shown, in order that the contract might not be abandoned and the work might proceed, advanced, or paid through the contractor himself, all the freight due to the railroad company to whom the freight was coming, amounting to $496.27.
It is said that the proof of the application of these payments was not very clear. But whatever proof there vas is not contradicted. The village, after all the time elapsed, sets up that it obligated itself for freight to the amount of $496.26, and we think this $496.27 was thus paid.
The question is whether it should be deducted from this sum claimed to be due. Sullivan makes no claim that this money is coming to him. It seems to us clearly, under the authority in the 26 Ohio St. and perhaps one or two other cases, that if the village had made this $496.27 payment, the village would have been entitled to it as against the parties to this action. Now, we think, if Sullivan, whose rights to a certain extent are being enforced here, had himself sued the village for that amount claimed, had he completed the contract, it would have been very clear that he could not have recovered again the $496.27 thus paid in the manner I have pointed out, for his relief. He would not have been allowed to recover it over again, and we think in equity this matter should be determined as it would have been in such a ease. It has been paid by the village, and although irregularly, the village is not contesting it. There is no suit against the village to recover it, and it is making no contest, but it acquiesces in the payment. We think that the persons standing in the shoes of Sullivan are not in a position to make this claim which Sullivan would not be allowed to make had he brought suit to recover.
We think that this $496.27 should be regarded as paid, and *6 the fund diminished that amount. That would leave the difference between $2414.58, and the $200, and the $496.27, as the fund to be distributed. That that fund should be increased in this case by interest upon it since the filing of the petition; the village should be charged interest at the rate of six per cent, on -this amount. It has retained the money in its own possession, from the creditors, instead of bringing the money into court. In a case in the 3 C. C. R., The P. Hayden Saddlery Hardware Co. v. Slade & Kelton et al., on page 71 the court says : “It is claimed on behalf of the owner, John Zelter, that the court erred in charging him with interest upon the amountdue the contractor from thetime it became due. This upon the theory that no order was made requiring him to pay thesameinto court, and that, as he by his answer expressed his willingness so to do, he ought not to be charged with interest. We do not think this claim is well founded. He was bound to pay it as soon as it fell due, and if doubtful as to the rights of the ¡parties to the same, he ought to have brought the money into court, and left it there for distribution. To relieve himself he should have done this; but having chosen to hold the funds, he cannot complain if the court charge him for the use thereof.”
Under the authority of that case, and because the plaintiff has not brought the funds into court to relieve it, we think that interest should be added to the fund, and when that is added, that constitutes the real fund to be distributed here.
Before passing to the main question in the case, there are some preliminary matters which I should dispose of regarding the validity of certain liens upon and other claims to this fund. It is agreed that all the parties whose claims were allowed by the court below, had taken such measures as to be entitled to a portion of this fund under section 3193, et seq., except those parties I shall mention. It is admitted that these amounts allowed by the court below are correct; also that the amounts claimed by all the other parties and which were not allowed by the court below are correct.
*7 As to A. Couchie & Co. it was claimed that these parties had taken no steps to perfect a lien upon this fund for $14.70, the amount of their claim; the same is alleged regarding the claim of Charles Thompson, for $7.54. By examining the pleadings, we find this to be the state of facts : They allege that they have taken all the proper steps in the proper timé, and there is no pleading contradicting the allegations of their cross-petitions.
The cross-petition in the first case sets up : First, that there is due to them on a due-bill set out by copy $14,70. Second, that in pursuance of a verbal contract entered into between the defendant Philip Sullivan and one Jens Jensen, the said Jensen performed 9 8-10 days labor at $1.50 per day in and towards the construction of Second street, between Fulton and Madison streets, in this village, provided for in a written contract between said village and Philip Sullivan, dated July 30, 1890; that the labor was performed before the filing of said due-bill with the village clerk; that said Jensen, subsequent to the filing of said itimized statement and due-bill, duly assigned and transferred said account to these defendants, and that they are the owners thereof, and that no payments have been made thereon.
The claim of Charles Thompson seems to have been drawn up by the same attorney; the same allegations appear, and read as follows : “ Now comes the defendant Charles Thompson, and for answer says that there is due him from the defendant Philip Sullivan, on a due-bill for work and labor performed by him to and for said Sullivan, a copy of which is hereto attached marked Exhibit “A” and made a part hereof, the sum of $7.54. Second: This defendant further says that in pursuance of a verbal contract entered into between the defendant Philip Sullivan and himself, he performed labor in and towards the construction of the improvement of Second street between Fulton and Madison streets in said village, provided for in a written contract between said village and said Sullivan, dated July 30, 1890; that said labor was performed be *8 fore the filing of said dne bill with the village clerk; and that on the 15th day of October, 1890, he filed with the village clerk of said village a sworn itemized statement of the amount and value of the labor performed by him ;” that no payments have been made; prays judgment for $7.54. Upon the face of these pleadings we think that these claims should be allowed.
In the case of Fred Grosh, more than six months had elapsed before a lien was filed ; that $30.00 should be excluded, and not allowed for that reason.
There is a claim of John Miner filed here, a part of which is contested, and a part of which is not contested. $32.20 is contested. The whole claim is $93.00 and something. I might say that this claim stands in the same way as the others. The answer and cross-petition sets up two due bills given to this claimant by Sullivan; and he attaches copies to the cross-petition, marked Exhibits “A” and “B.” The first-one is for this $32.20, and is dated September 30, 1890; the next is dated Oct. 31,1890. After setting out these due bills, the cross-petition says that “this defendant further says, that in pursuance of a verbal contract, he performed twenty-seven days work with his team of horses, in and towards the construction of Second street and the improvement of the same, in the village of Port Clinton, between Fulton and Madison streets, provided for in a written contract between said village and said Philip Sullivan, dated July 30, 1890; that he performed said labor during the months of August,' September and October, 1890; that on the 11th day of December, 1890, and within sixty days from the performance of said labor, this defendant filed with the council of said village of Port Clinton, and in the office of the clerk of said village, a sworn and itemized statement of the amount and value of such labor so performed, etc., containing a description of said promissory notes or due bills which were given him by Sullivan on account for said labor, etc.” It appears by this cross-petition that this man, in August, worked along and received an esti *9 mate from Sullivan in September ; then the next month he got a due bill. If this statement had not been made “ that within sixty days after he filed his account, etc.,” there would probably have been little question. We think that the whole claim for twenty-seven days work, being a contract complete, isto be allowed, not because of his due bill in September, but because the giving of the due bill did not deprive him of the lien he took after that. We allow the claim to the full amount.
There are claims filed by Heiberg, Plopfinger and St. John. Their cross-petitions simply say that certain persons worked on Second street, andassigned their claims to them, and they took them to the council; that the council have retained the accounts since then, but have not paid them. These claims are not liens. It appears that no verified statements were filed as required by law. We are unable to allow any of these claims to come in with the other liens on this fund, and as the liens will exhaust the fund, these claims will therefore be rejected.
The more serious question as to the division of this fund, now to be distributed, presents itself. It is agreed upon by the parties that these lienholders and material-men and laborers, whose claims have been allowed as indicated, are equal as regards pro rating any funds that are on hand. That is, their claims will be paid pro rata out of any money distributed to them. They together make ■ one set of claimants, and the sureties who took the work in the latter part of October, and completed it, make the other. So that the question is, how this fund is to be divided between these two sets of claimants, — the lienholders and the sureties. We had a case similar to this at Sandusky, and during the hearing of the case, we announced to counsel the conclusion we had arrived at in that case. That case and this seem to be alike, except in that case the sureties were more fortunate in being able to complete the contract within the original contract price; there was a little profit, and the sureties were claiming to be allowed the overplus they had crea *10 ted. What was done? They were allowed what they actually expended, but that did not exceed the' amount that the contractor had thus earned.
In this instance, unfortunately, the sureties have completed the contract at a loss, unless they shall be allowed to come in pro rata with these other claims upon this other part of the fund. We have gone over the whole ground with this question in our minds, whether by applying any equitable principles we can give the sureties the full amount of their expenditures out of the general balance. That subject is spoken of in some cases. In the case of Bullock v. Horn, 44 Ohio St. 424, the court says : “ The statute is highly remedial in its character, and should receive such liberal construction as will carry out the purpose of the legislature in its enactment. The labor of the workman and the material of the material-man having contributed to the erection of the structure; having, indeed, created in part the very property to which the lien is sought to be attached, the purpose of the law is to give to such parties the rights, where the contractor refuses to pay, to be paid for their labor and material out of the fund which has been earned under the contract, and out of the structure and the land on which it stands, such claim, as to amount, not to be in excess of the claim of the contractor as measured alone by the contract and his performance of it. In giving construction to this statute, by a fair inference it may be assumed that the rights of the workman and material man, as against the owner, are the basis of the latter’s contract with the contractor, and while they are subordinate to the contract, and are worked out through it, those parties have a right to rest in security upon it and the means provided by law to secure its application on their demands. In the absence of fraud they are presumed to have notice of the terms of the original contract. Hence, if the original contract showed that payment had been made in advance to the contractor, or if it contemplated the allowance, by the contractor, of aset-off then held or to be acquired by the owner as payment, such provisions *11 would bind the workmen and material-men, as they would be held to have accepted employment of the contractor with an implied assent to such terms. But, where the contract was silent as to'advance payments, and as to claims of the owner against the contractor, workmen and material-men could not be held to have accepted employment with a view to such contingencies.” And in Dunn v. Rankin, 28 Ohio St., on page 142, the court says: “ If there be distinct jobs of the kinds enumerated in the statute, under separate contracts, though under contracts between the same owner and contractor, the liens of the sub-contractors are respectively confined to the amount due on the contract each one aided the contractor to perform ; the same as it would be if the owner had contracted each job to a different contractor; for the policy of the statute is not to give a general lien to the subcontractor, but to give him a right to the fund to which his own labor or materials have contributed.” It will be seen here that this idea has been enforced by the Supreme Court; that the creditor has recourse to the building or structure he has helped to build, and is to be paid out of that money which he has helped the principal contractor to earn. So that in distributing this fund along these lines, this fund must be regarded as in two parts; a part which was earned before Sullivan abandoned the contract, and that portion which arose on the completion of the contract by the sureties. Now', we have estimates which show how this division should be made. Sullivan never had an estimate, although the contract show's that he was to have one twice a month; but after he abandoned the work, and before the sureties took hold of it, the village caused an estimate to be made of all done under Sullivan, and it was found to be $2,414.58; that was the estimate of the engineer, the balance was done by the sureties. The bids for the contract give separate prices for certain parts of the work. I call attention to this portion of the contract regarding the ownership of the earth : “ The street and intersections to be graded to such grades, sub-grades and cross sections as shown by *12 the plans, and as the civil engineer in charge shall direct; the sub-grade to conform to the proper crown of the street when completed; measurement of all earth work to be made in excavations ; the price for excavation to include all'filiing which may be necessary in either roadway, sidewalks or intersections; the balance of the earth required to be moved to belong to and must be-disposed of by the contractor.”
The fifth subdivision of the contract reads as follows : “Said first party agrees, upon presentation of a certificate of the Civil Engineer showing the completion of said work or a part thereof in strict accordance with this contract, to pay the sum shown by such certificate to be due for work done and materials furnished therein under this contract; provided, that until the completion and final acceptance of the whole of said work by the council, the second party is, in no event, to receive more than 85 per cent, of the amount due on this contract; said first party agrees that said engineer shall make such estimates and furnish certificates therefor on the 15th and 30th days of each month hereafter, and until the completion of said work ; that the final acceptance of said work by, the council shall not be delayed more than ten days after the completion of the same.”
Although this estimate of October, 1890, was not made for Sullivan before he abandoned the work, it was made officially, and, we think, in place of one of these partial estimates, as a partial estimate for him just before he abandoned the work. These partial estimates are not considered as finalities, and the Engineer, in making them, while he is supposed to be accurate, is a little liberal in making these estimates, because they can bo made right on the final estimates.
Now, although this estimate of the 24th of October, 1890, is practically uncontested, yet we must view it in the light of the whole proof in the case. We think that Sullivan had not earned the amount of |2,414.58 when he quit the work ; that it is to be regarded as a partial estimate, to be made more cor *13 rect in the final estimate. It is noticed that only 85 per cent, is payable to him. He himself could have sued the village for it and received 85 per cent.; 15 per cent, was not due and payable to him. We are inclined to view the matter in this way : that this 15 per cent, which was earned after this estimate, is to be delivered to the sureties; that the sureties in completing the contract, did not do the work measured by the value after subtracting $2,414.58 from the contract price, but they put in an additional value that was still left provided for by the contract. Sullivan never became entitled to this 15 per cent.; we think he never earned it; that unless the sureties or somebody had completed the contract, Sullivan never would have been entitled to it. The amount due to these lienholders must be measured by the amountto become due Sullivan. We think that this 15 per cent should be held to have been earned by the sureties who completed the contract; that their work alone made it payable on this contract, and the facts in this case seem to require this as equity ; that each man should be paidoutofthe work that he has helped to perform; that the sureties did not help earn any part of this 85 per cent, and that the other claimants did. We are unable to see how the sureties can be entitled to any part of this 85 per cent., or how the claimants under Sullivan can have any claim on the 15 per cent, of this $2,414.58.
Now, as we view this matter, out of this $2,414.58, there should be taken $200.00, $496.27, and 15 per cent, of that amount, being $362.18, for the sureties, making in all $1,058.45 ; that after deducting that amount from $2,-414.58, leaving $1,356.13, this latter sum should be set apart as the fund to the lienholders, and to this is to be added interest — its portion of the interest, and to this $1,356.13 its portion of interest should be allowed. The $496.27 was a matter liable to create a question, and the way in which that matter was handled, invited a contest in regard to it. How much of the litigation was made by it we cannot know perhaps. Half of the costs will be assessed against the village, the other *14 half to be paid out of the gross amount before distribution ; and distribution is to be made along the lines I have indicated.
T. J. Marshall, for the sureties.
Scott Stoll, for the village.
John Duff, H. H. Magruder, and others, for the lienholders.